```
                    UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                              )
                                    )    Chapter 7
KEN PAXTON                          )
JILL PAXTON                         )    Bankruptcy No. 04-03517
                                    )
Debtors.                            )
                                    )
_____        )
                                    )
GEOFF LOHFF                         )
DENNIS CURRELL                      )
                                    )
     Plaintiffs,                    )    Adversary No. 04-9221
                                    )
vs.                                 )
                                    )
KEN PAXTON                          )
                                    )
     Defendant.                     )
```

**ORDER RE: OBJECTING TO DISCHARGE OF DEBT**

This matter came on for trial on January 25, 2006 pursuant to assignment. Plaintiff Geoff Lohff was represented by Ron Ricklefs. Plaintiff Dennis Currell represented himself in this matter. Debtor/Defendant Ken Paxton was represented by John Titler. After hearing evidence and arguments, the Court took the matter under advisement. The time for filing briefs has passed, and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

**STATEMENT OF THE CASE**

Debtor/Defendant Ken Paxton was a fifteen percent shareholder of On-Line Services (OLS), which filed a Chapter 7 petition (Bank. No. 03-04806) on December 23, 2003. Mr. Currell was listed as an unsecured creditor with a claim of $90,000. Mr. Lohff was also listed as an unsecured creditor with a claim of $90,101. Both claims were disallowed on January 28, 2005. This Court issued a final decree on the OLS Chapter 7 case on January 3, 2006.

Debtors Ken and Jill Paxton filed their Chapter 7 petition (Bank. No. 04-03517) on September 9, 2004. This Court granted Ms. Paxton a discharge on May 18, 2005. Mr. Paxton's Chapter 7 petition is still pending.

    Plaintiffs Geoff Lohff and Dennis Currell filed this adversary proceeding against Mr. Paxton on December 17, 2004. Plaintiffs claim to be creditors of OLS and assert that Mr. Paxton, while an officer of OLS, violated his fiduciary duty to the company by entering into an agreement with a competitor, Giant, to undermine OLS. Mr. Paxton asserts that he did not breach his fiduciary duty to OLS, that his negotiations with Giant were to ensure OLS' financial security, and that he owed no duty to either Mr. Lohff or to Mr. Currell.

## FINDINGS OF FACT

    OLS formed when a previous internet company, Internet Navigator (INAV), filed Chapter 11 bankruptcy. Mike Glick, a creditor of INAV, filed a creditor's plan which was ultimately approved by the Court. In accordance with the approved plan, OLS assumed all debt owed by INAV. Mr. Glick, an eighty percent shareholder of OLS, entered into a Consulting Agreement (Agreement) with Mr. Geoff Lohff on February 1, 2002. (Plaintiffs' Exhibit No. 1.) Paragraph six of the Agreement states, "In the event that the principal shareholder of the Company, Michael L. Glick, sells seventy percent or more of the capital stock of the Company to a third party, the balance of the Consulting Fee shall be due and payable immediately to the Consultant." Id.

    Mr. Paxton was a fifteen percent shareholder of OLS. On August 14, 2003 he entered into a Letter of Intent (Letter) with Mike Glick to purchase Mr. Glick's majority holdings of OLS. As part of the terms of the Letter, Mr. Paxton was to purchase seventy five percent of OLS and become majority shareholder, holding ninety percent of the company's interests. INAV was defined in the Letter in part as "On-Line Services Ltd., L.L.C., an Iowa limited liability company. . ." (Plaintiffs' Exhibit No. 2.) Section (7)(i) provided that "[Mike] Glick shall assign his rights and obligations of the Payment Agreement with Dennis Currell to INAV, Paxton shall cause INAV to accept the assignment of this Payment Agreement and obtain Currell's consent to the assignment." Id. The Letter also incorporated Mr. Glick's Agreement with Mr. Lohff. Id. at 7(h).

    The parties disagree as to whether Paragraph Six of Mr. Glick's Agreement with Mr. Lohff was triggered. Plaintiffs claim that Mr. Glick's sale of his majority holdings to Mr. Paxton was a triggering event, causing the balance owed to Mr. Lohff to become immediately due. Mr. Paxton claims that he did not consider the Letter to be binding, and the transfer of stock was not completed due to Mr. Paxton's inability to secure financing.

The parties also disagree as to whether Mr. Paxton was acting in the best interests of OLS. Mr. Paxton claims he had entered into negotiations with Giant in the hopes of merging the two companies. He asserts the merger would have saved OLS from bankruptcy and would have saved the jobs of several employees. Mr. Paxton claims a computer router given to Giant was done to pay fees owed to Giant, and he did not breach any duty of confidentiality he owed to OLS. Mr. Paxton further asserts he never had any personal obligations to either Mr. Lohff or Mr. Currell.

Plaintiffs assert Mr. Paxton entered into talks with competitor Giant in the hopes of saving his own job and gave Giant a router that belonged to OLS without authorization. Plaintiffs further assert Mr. Paxton shared confidential information with Giant. Finally, Plaintiffs assert Mr. Paxton assumed OLS' debts, including money owed to Mr. Lohff and Mr. Currell, when he signed the Letter of Intent.

## CONCLUSIONS OF LAW

### STANDING

A derivative action exists when a stockholder proceeds in a suit against corporate officers on behalf of the corporation if it is apparent that the corporation will suffer loss if appropriate action is not taken, "and those in authority are at fault, or fail or refuse to act." Holden v. Construction Machinery Co., 202 N.W. 2d 348, 365 (Iowa 1972).

> In the absence of statutory language giving creditors a direct cause of action against corporate officers and directors, the rule generally followed is that a creditor may not maintain a personal action at law against officers or directors who have committed a wrong against the corporation, such as mismanagement, waste, or diversion of assets.
>
> . . .
>
> The reason is that officers and directors owe a duty to the corporation and not to third parties who might be injured incidentally by the wrong committed against the corporation. Additionally, privity is lacking due to the absence of a contractual relationship between corporate officers and creditors.

Webster Indus. v. Northwood Doors, Inc., 234 F. Supp. 2d 981, 996 (N. D. Iowa 2002)

At no time were Mr. Lohff and Mr. Currell members of OLS. Any debt to Plaintiffs incurred by OLS resulted from agreements between Mr. Glick and Plaintiffs, not Mr. Paxton and Plaintiffs. This Court specifically disallowed claims made by Plaintiffs in OLS' Chapter 7 bankruptcy (Bank. No. 03-04806). Mr. Paxton, individually, did not make any personal guarantees to either Mr. Currell or Mr. Lohff. The Court concludes that Plaintiffs do not have standing to bring this derivative action against Mr. Paxton. See Iowa Code § 487.1002, § 490A.1001.

## SECTION 727

Plaintiffs object to Mr. Paxton's discharge under § 727(a)(4)(A) (made a false oath or account), § 727(a)(4)(C) (gave money for forbearing to act), and § 727(a)(7) (improper acts in connection with another Bankruptcy case concerning an insider). Section 727(a) states, in pertinent part:

> (a) The court shall grant the debtor a discharge, unless-
>
> . . .
>
>> (4) the debtor knowingly and fraudulently, in or in connection with the case-
>>
>>> (A) made a false oath or account
>>>
>>> . . .
>>>
>>> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage for acting or forbearing to act.
>>
>> . . .
>
> (7) the debtor has committed any act specified . . . on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.

As the primary goal of the Bankruptcy Code is to provide honest debtors with a "fresh start," exceptions to discharge are generally construed narrowly against the creditor and liberally for the debtor. In re Kline, 65 F.3d 749, 751 (8th Cir. 1995); In re Van Horne, 823 F.2d 1285, 1287 (8th Cir. 1987). Section

727(a) requires that Plaintiffs prove the elements of their claim by a preponderance of the evidence.  <u>In re Juehring</u>, 332 B.R. 587 (Bankr. N.D. Iowa 2005).

### SECTION 727(a)(4)(A)

To prove a false oath, the plaintiff must show by a preponderance of the evidence that (1) Debtor made a statement under oath; (2) that statement was false (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent; and (5) the statement related materially to Debtor's bankruptcy case.  <u>In re Gehl</u>, 325 B.R. 269, 276 (Bankr. N.D. Iowa 2005).

Conflicting evidence was presented regarding Mr. Paxton's intentions regarding OLS in relation to his involvement with Giant.  Plaintiffs claim that Mr. Paxton lied under oath when he asserted that his negotiations with Giant and contact with OLS employees were authorized by OLS members.  Mr. Paxton maintains that he was trying to "save" OLS by merging OLS with Giant, thereby salvaging the company and retaining employees.  Further, minutes for a November 4, 2003 meeting provided by Plaintiffs as Exhibit 12 specifically state, "Mr. Paxton was also asked if a contract had been signed between OLS and Giant regarding the city projects and he said no because with the refinancing, there was a chance that the two companies would be merged together," thereby indicating that OLS was aware of Mr. Paxton's possible negotiations with Giant.  Plaintiffs have not met their burden under § 727(a)(4)(A) by a preponderance of the evidence.

### SECTION 727(a)(4)(C)

In order to sustain an objection under § 727(a)(4)(C), the creditor must establish (a) knowledge and a fraudulent intent on the part of the debtor and (b) the giving of money for a promise of forbearance by the creditor.  <u>See generally</u> 2 <u>Collier on Bankruptcy</u> ¶ 727.06 (Henry J. Sommer et al. eds., 3rd ed. rev. 2005).  Plaintiffs claim that the "assignment of payments, and resulting major disruption in the cash flow of OLS . . . did damage only to OLS, as it's ability to meet expenses greatly diminished." (Plaintiffs' Post Trial Brief at 5).  Minutes for a November 7, 2003 meeting, provided by Plaintiffs as exhibit 12 state,

> Mike Glick informed the board on the status at Solon State Bank.  At the present time, OLS is behind approx. $20K on the subordinated debt payments and another regular monthly payment is due on 11/13/03.  Neal Erusha (bank president) has sent cure letters and had a meeting with Ken Paxton and Mike Glick.  To appease Mr.

>    Erusha, Ken and Mike assigned, in writing, the proceeds
>    from the Your Net Plus contract each month. Solon
>    State Bank will receive those payments directly and
>    would be caught up and receiving double loan payments
>    each month.

The minutes demonstrate that both Mr. Glick and Mr. Paxton assigned the proceeds from Your Net Plus to Solon State Bank, and that OLS was behind on payments to the bank. Plaintiffs have not met their burden under § 727(a)(4)(C) by a preponderance of the evidence.

### SECTION 727(a)(7)

Section 727(a)(7) concerns activity by a debtor in connection with another bankruptcy case concerning an insider. OLS filed its Chapter 7 petition (Bank. No. 03-04806) on December 23, 2003. At the time of filing, Mr. Paxton was a fifteen percent shareholder of OLS. The Court has taken judicial notice of OLS' Chapter 7 bankruptcy and has reviewed the file. Mr. Paxton was listed as an unsecured creditor of OLS in the amount of $52,692.35. The Trustee's proposed distribution of funds did not allot any money to Mr. Paxton, stating that he had attempted to convert assets of OLS pre-petition and had received preferential payments. However, the record in OLS' Chapter 7 case does not contain any testimony or evidence addressing sections 727(a)(2), (a)(3), (a)(4), (a)(5), or (a)(6). The record simply notes that no objections to the Trustee's proposed distribution of funds were timely received. Plaintiffs have failed to prove the elements of § 727(a)(7) by a preponderance of the evidence.

### CONCLUSIONS

Plaintiffs do not have standing to initiate a derivative proceeding. Further, Plaintiffs have failed to prove by a preponderance of the evidence that Mr. Paxton made a false oath or account under § 727(a)(4)(A), gave money for forbearing to act under § 727(a)(4)(C), or committed improper acts in connection with another Bankruptcy case concerning an insider under § 727(a)(7).

**WHEREFORE**, Plaintiffs do not have standing to bring this derivative action.

**FURTHER**, Plaintiffs have failed to prove the elements of their claims under, § 727(a)(4)(A), § 727(a)(4)(C), and § 727(a)(7) by a preponderance of the evidence.

**FURTHER**, Plaintiffs Geoff Lohff and Dennis Currell's Complaint Challenging Dischargeability of Debt and to Deny Discharge with respect to Ken Paxton is DENIED.

Dated and Entered: May 30, 2006

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE